William H. States, Jr. v. Commissioner.
States v. Commissioner
Docket No. 39167.
United States Tax Court
T.C. Memo 1955-164; 1955 Tax Ct. Memo LEXIS 176; 14 T.C.M. (CCH) 628; T.C.M. (RIA) 55164; June 23, 1955
*176 Upon the evidence, held: (1) That the petitioner realized taxable income in each of the years 1944 and 1945 in the amounts determined by the respondent, which he failed to report in his income tax returns. (2) That the petitioner is not entitled to deductions, as business expenses, for alleged payments of fines for traffic violations. (3) That part, at least, of each income tax deficiency is due to fraud with intent to evade tax; additions to the deficiencies under section 293(b), 1939 Code are sustained. William H. States, Jr., R.R. 1, Croydon, Pa., pro se. John D. Armstrong, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for 1944 and 1945 in the amounts of $28,279.72 and $48,375.85, respectively, *177 to which he added 50 per cent penalties for fraud, under section 293(b) of the 1939 Code, in the respective amounts of $14,202.36 and $24,187.93. Although the respondent, in his answer, made claim for increases in the deficiencies and penalties, he has now waived all such claims. The questions to be decided are as follows: (1) Whether petitioner realized and failed to report net taxable income in each year in the amounts determined by the respondent. (2) Whether petitioner is entitled to a deduction in each year for sums paid for traffic violation fines. (3) Whether any part of the deficiency for each year is due to fraud with intent to evade tax under section 293(b) of the 1939 Code. Findings of Fact Petitioner resided in Croydon, Pennsylvania during 1944 and 1945. He filed individual income tax returns for the years in question with the collector for the first district of Pennsylvania. Petitioner first engaged in business in 1928. In 1938, he went into the trucking business under the name of States Trucking, and he was engaged in the trucking business in 1944 and 1945 when he operated a fleet of tractor-trailer trucks in an area extending from Vermont to Florida and from *178 Pennsylvania to Chicago. Petitioner was engaged in the trucking business in 1944 and 1945. The Commissioner's agents, in connection with the audit of petitioner's returns for 1944 and 1945, made an investigation of petitioner's transactions with customers which revealed that petitioner had received payments which he did not enter in his accounting records and did not report in his income tax returns. The Commissioner found that petitioner's accounting records were incomplete, were inadequate, and did not clearly reflect his income for each of the years in question. Therefore, the Commissioner reconstructed petitioner's income for each year on the basis of bank deposits and cash expenditures. Upon such reconstruction of income, the Commissioner determined that petitioner's taxable net income for 1944 and 1945 amounted to $54,100.55 and $79,331.40, respectively, and that the petitioner realized and failed to report income for 1944 and 1945 in the amounts of $53,609.10 and $90,932.61, respectively. In his income tax return for 1944, petitioner reported taxable net income in the amount of $6,152.67. In his return for 1945, the petitioner reported a loss of $12,197.38. In his return *179 for 1944, the petitioner deducted $132.75 for traffic violation fines. Also, in his return for 1945, he deducted $153.58 for such fines. The respondent disallowed these deductions. In his return, petitioner reported that his gross receipts amounted to $172,681.93 for 1944, and $141,781.37 for 1945. The respondent determined that petitioner's gross receipts amounted to $226,291.03 for 1944, and $232,713.98 for 1945. These determinations resulted in increasing the amounts which petitioner reported as his gross receipts by $53,609.10 and $90,932.61, respectively. Petitioner's accounting records for 1944 and 1945 were incomplete, inadequate, and did not clearly reflect his true net income for those years. Petitioner's books did not agree with his income tax returns for 1944 and 1945. Respondent properly reconstructed petitioner's taxable net income for 1944 and 1945, and he properly used the bank deposits and cash expenditures method of determining petitioner's taxable net income for each of the taxable years. Petitioner's accounting records for 1944 and 1945 were limited to tablets in which single entries in ink or in pencil were made. No ledger was kept. Petitioner did not maintain *180 a complete system of accounting records. Also, he did not employ a bookkeeper, and he did not have an accountant audit his books. Petitioner kept his own informal accounting records, such as they were. Petitioner had checking accounts in the Northeast National Bank and Peoples National Bank & Trust Co. in which he made the following deposits during the taxable years 1944 and 1945: 1944
1945
Northeast National Bank
$111,600.51
$166,437.55
Peoples National Bank &
Trust Co.
45,723.68
90,625.60
$157,324.19
$257,063.15
The schedule prepared by the respondent, "Determination of Income on the Basis of Cash Expenditures and Bank Deposits," Exhibit E, together with the attached schedules consisting of 12 pages, is incorporated herein by this reference. The facts set forth in the entire exhibit are found according to the facts and figures which are set forth therein. Petitioner's income tax returns for the taxable years 1944 and 1945 were prepared by an insurance broker named Riedel. He did not examine any books or records at the time he prepared the returns. He simply prepared the returns from the information given him by petitioner without any discussion. *181 For the taxable year 1944 petitioner gave him a list of deductions and a figure for total receipts. For the taxable year 1945 petitioner gave him a list of deductions and a list of customers with the amounts received from each one. Expenses listed on the returns were considerably in excess of those recorded on the books and in some instances expenses listed on the returns were not recorded in the books at all. The total amount of expenses listed on petitioner's return for the taxable year 1944 exceeded the total amount of expenses recorded on his books by $60,577.31. The total amount of expenses listed on petitioner's return for the taxable year 1945 exceed the total amount of expenses recorded on his books by $29,662.84. The Internal Revenue Agent and the Special Agent who made the investigation in this case made an examination of petitioner's customers' transactions through bank records and other media, and found that petitioner had received amounts from people which he did not include on his returns or books. Petitioner made cash expenditures for business and personal expenses during the taxable years 1944 and 1945 in the following amounts: 1944
1945
Business Expenses
$71,823.95
$33,932.62
Personal Expenses
1,500.00
1,500.00
$73,323.95
$35,432.62
*182 Petitioner expended $25,000 in cash during the taxable year 1944 in the purchase of United States Government bonds and $5,000 during the taxable year 1945 in the purchase of United States Government bonds. Petitioner paid Christmas bonuses to his drivers in cash during the taxable years 1944 and 1945 in the amounts of $675 and $775, respectively. Petitioner spent $37,500 during the taxable year 1945 in the purchase of cashier's checks. Petitioner paid $2,500 cash in the taxable year 1945 toward the purchase of stock in Penna. Frosted Foods, Inc. During the taxable years 1944 and 1945 petitioner received the amounts of $8,650 and $19,450, respectively, from the sales of trucks. In the taxable year 1944 petitioner received $4,750 from Robert Cobleigh for equipment which he purchased for him in the year 1944. In the taxable year 1944 petitioner cashed checks payable to himself or his business in the total amount of $13,274.94 which he drew on his own bank accounts. During the taxable years 1944 and 1945 petitioner collected transportation tax from customers in the amounts of $1,783.54 and $1,888.31, respectively. Petitioner borrowed from Northeast National Bank $30,000 *183 on November 13, 1945, and $10,000 on December 7, 1945. Petitioner received interest income from bonds during the taxable year 1945 in the amount of $1,900. During the taxable year 1945 petitioner wrote two checks on one of his bank accounts, one for $1,000 and one for $3,500, payable to himself or his wife, which he redeposited in another bank account. During the taxable year 1945 petitioner purchased a farm in Bucks County for $41,500 and purchased $8,750 worth of United States Government bonds. He bought $25,000 worth of stock in Penna. Frosted Foods, Inc., and made a loan of $25,000 to the incorporators of this corporation. He also made a loan of $8,000 to Kensington Wagon Works in 1945. Neither of these loans was repaid during the year 1945. Lehigh Foundries, Incorporated, made payments to petitioner during the taxable years 1944 and 1945 for hauling services in the total amounts of $5,474.45 and $5,733.22, respectively. Petitioner failed to report the receipt of any income from Lehigh Foundries, Incorporated, on his income tax return for the taxable year 1944. On his income tax return for the taxable year 1945 petitioner reported receipts from Lehigh Foundries, Incorporated, *184 in the total amount of $4,836.65. Theresa Friedman & Sons made payment to petitioner of $55.25 in 1945 for hauling services. American Stores Company paid petitioner $584.58 in 1945 for trucking services. Puritan Pies, Incorporated, paid petitioner $194.06 in 1945 for hauling services. Petitioner failed to report the receipt of any income from Theresa Friedman & Sons, American Stores Company or Puritan Pies, Incorporated, on his income tax return for the taxable year 1945. Breyer Ice Cream Company made payments to petitioner in 1944 and 1945 for hauling services in the amounts of $236.49 and $279.55, respectively. Petitioner failed to report the receipt of any income from Breyer Ice Cream Company on his returns for either of the taxable years 1944 and 1945. Petitioner opened a safe deposit box in Northeast National Bank on October 5, 1943, which he still maintains. He never told the Internal Revenue Agent nor the Special Agent during their investigation what he had in this box, nor did he ever open the box for them. Petitioner's net worth as of December 31, 1942, was $89,400.80. Petitioner's net worth as of November 30, 1945, was $304,002.86. The Special Agent asked petitioner *185 if he had ever received any gifts, inheritances or income of any kind from any trust funds, inheritances or other source since January 1, 1944. His answer was, "none except Dad gave me one or two thousand dollars years ago to start in business." During his investigation the Internal Revenue Agent asked petitioner what his investment in Penna. Frosted Foods, Inc., was. Petitioner stated it was $6,250. In the statement of net worth given to the Special Agent as of December 31, 1945, petitioner included his equity in this corporation at $2,500. Later he stated to the Internal Revenue Agent that his equity was $15,000 or $16,000. These estimates and statement were given at a time when petitioner's equity in Penna. Frosted Foods, Inc., was $25,000. Petitioner was indicted in the United States District Court for the Eastern District of Pennsylvania for attempted evasion of income taxes for the years 1944 and 1945 by filing false and fraudulent tax returns. He plead not guilty to all counts, was tried and was convicted for the year 1944. Petitioner claimed a dependency credit for his father on his income tax returns for each of the taxable years 1941, 1942, 1943. During these years *186 his father was earning income from farming, and in 1942 and 1943 this income exceeded $2,000 per year. Petitioner's business was operating profitably during the taxable years 1941 to 1945, inclusive, yet he reported net income on his income tax returns for each of the taxable years 1941 to 1945, inclusive, as follows: 1941
$ 5,041.56
1942
3,768.63
1943
3,949.61
1944
6,152.67
1945
(12,197.38) loss
Petitioner received taxable income from his business during the taxable years 1944 and 1945 in the amounts of $53,609.10 and $90,932.61, respectively, which he failed to report. Petitioner's corrected net income for the taxable year 1944 was $54,100.55 and for the taxable year 1945 was $79,331.50. Petitioner's income tax returns for the taxable years 1944 and 1945 were false and fraudulent. The deficiencies in income taxes for the taxable years 1944 and 1945 are due in part to fraud with intent to evade tax. Opinion Issue 1. The first issue is whether petitioner had income in 1944 and 1945, which he failed to report in his income tax returns, in the amounts of $53,609.10, and $90,932.61, as the respondent has determined, or in any lesser amounts. The petitioner *187 has the burden of proving that the respondent's determinations of the amounts of his net taxable income for each of the years 1944 and 1945 are not correct. The respondent's determination carries a presumption of prima facie correctness. . Petitioner did not maintain any complete system of accounting for his trucking business. He kept his own books of account which consisted in the main of tablets on which single entries in pen or pencil were made. He maintained no ledger at all. He did not record all of his income and expenses in these tablets, and he admitted as much. The books obviously were inadequate to clearly reflect petitioner's income for the taxable years 1944 and 1945. Petitioner conceded that fact at the beginning of the trial. Respondent, therefore under the authority of section 41 of the 1939 Code, made determinations of petitioner's net taxable income by means of the bank deposits and cash expenditure method. That is an acceptable method of determining a taxpayer's taxable income. Petitioner has agreed that the items and amounts entering into respondent's determination were correct, but he does not agree that all of the *188 bank deposits and cash used to make the expenditures which were set forth in respondent's determination were income to him. He provided the Court with no audit statement, however, nor did he ever present any of his books of account. Neither did he have his accountant who assisted him at the trial take the stand and testify. All petitioner offered to the Court in support of his contention were certain miscellaneous unsubstantiated papers and his own uncorroborated self-serving testimony. He called not a single witness to the stand. Petitioner claims that he received $52,746.77 from the United States Government in 1943 for hauling surplus commodities, and that he put this money in cash in his safe deposit box. He testified further that he spent $25,000 of this money for United States Government bonds in 1944, and that he spent the balance in 1945 for cashier's checks. However, he never mentioned the alleged fact that he had paid any of this money to the agents during their investigation. He told the Special Agent that he had a safe deposit box, but he did not ever mention that he kept any money in it during the years 1944 and 1945, nor did he ever open the box for the agents. In fact *189 in sworn statements made to the Special Agent during his investigation petitioner stated that he bought the $25,000 in Government bonds out of $42,000 given to him by his father before he died. Yet prior to making those statements he had told the Special Agent that he had not received any gifts, inheritances or income of any kind since January 1, 1944, except that "Dad gave me one or two thousand dollars years ago to start in business." Moreover, on his income tax return for each of the years 1941, 1942 and 1943 petitioner stated that he had not received any nontaxable income during that year. Careful consideration has been given to all of petitioner's testimony and to all of the record. Petitioner has failed to prove by competent and credible evidence that he had either $52,000, or $42,000, or $94,000 at the beginning of 1944. Petitioner's testimony with respect to his purported receipt of $42,000 from his father is wholly uncorroborated. His assertion that he did not spend, prior to 1944, $52,746.77 which he claims he received from the Government in 1943, for trucking, and placed in a safe deposit box, is not credible. Examination of petitioner's income tax returns for 1943 reveals *190 that he reported a net income of only $4,291.43 out of gross receipts of $102,372.18, after costs and expenses of $98,080.75. The income tax return for 1943 does not support petitioner's claim that he saved $52,746.77 out of his gross receipts for 1943. Of course, he might have received the amount in question and failed to report it in his gross income for 1943. If petitioner takes that position, the problem is whether petitioner's testimony that he had either approximately $52,000 at the beginning of 1944, in a safe deposit box, or $52,000 plus $42,000, is worthy of belief. In the absence of any evidence in support of petitioner's bare assertion that he had $52,000, or more in cash, at the beginning of 1944, in a safe deposit box, we must reject the contention, and we conclude that petitioner's testimony with respect thereto is not credible. Petitioner's testimony on this matter is self-serving, indefinite, and it is not corroborated. This Court is not obliged to believe the testimony, , certiorari denied ; . The record shows that petitioner made different *191 and inconsistent statements at various times. The Court carefully observed the petitioner during the trial of this proceeding. The record has been closely analyzed. The only conclusion which can be made is that the petitioner has failed in his burden of proof, and in his attempt to overcome the prima facie correctness of the respondent's determinations of the amounts of his taxable net income for 1944 and 1945. The petitioner introduced into evidence many fragmentary pieces of evidence in an effort to show error in respondent's determination of the amounts of petitioner's taxable net income for 1944 and 1945. Such evidence is not sufficient, however, to establish error in respondent's ultimate determination of the amounts of taxable net income. Issue 2. Petitioner, in his petition, claimed that he is entitled to deductions in 1944 and 1945 for $132.75, and $153.58, respectively, for payments of traffic violation fines as business expenses. Petitioner failed to prove that he made payments in the taxable years of such fines. If he did make such payments, there is no proof that the payments constituted ordinary and necessary business expenses. For failure of proof, the deductions *192 claimed are denied. Petitioner relies entirely upon the record made in the trial of this case. No brief was filed by or on petitioner's behalf. Under these circumstances, petitioner's position with respect to several questions is not entirely clear. We have endeavored, nevertheless, to give fair and understanding consideration to the issues raised by the pleadings, and to petitioner's contentions which he made orally during the course of the trial. The respondent was justified in resorting to the bank deposits and cash expenditures method of determining petitioner's taxable net income for 1944 and 1945 because petitioner's books and records were incomplete and inadequate, and they did not clearly reflect his income. Petitioner relies primarily upon the assertion that he had a substantial amount of cash on hand at the beginning of 1944, either $94,000 or $52,000, which, he contends, provided the funds for his cash expenditures. Since he has failed to prove the possession of the alleged accumulation of money at the end of 1943 and the beginning of 1944, his case falls. It is held that the petitioner realized taxable income in 1944 and 1945, in addition to the amounts which he *193 reported in his income tax returns, in the amounts of $53,609.10 and $90,932.61, respectively. It is held, further, that petitioner is not entitled to deductions in the amounts of $132.75, and $153.58, in 1944 and 1945, respectively, for alleged payments of fines for traffic violations. The respondent's determinations of the deficiencies in tax for 1944 and 1945 are sustained. Issue 3. The remaining question is whether any part of each deficiency is due to fraud with intent to evade tax so that petitioner is liable for 50 per cent penalties under section 293(b). The respondent has the burden of proof under this issue. It is concluded and held that the respondent has sustained his burden of proof. The evidence establishes that in 1944 and 1945, the petitioner received income in substantial amounts which he failed to report in his returns. Repeated and continuous understatements of income in substantial amounts is strong evidence of a fraudulent intent to evade tax. See, , affirming ; ; and . The conclusion is inescapable, *194 upon the entire record, that part, at least, of each deficiency was due to fraud with intent to evade tax. The penalties, under section 293(b), are, therefore, sustained. Decision will be entered for the respondent.